UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEAN BAIRACTARIS,

       Plaintiff,

Case No. 10-10983

Honorable John Corbett O'Meara

v.

JEFFREY WEBER, *et al.*,

       Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' AUGUST 17, 2010 MOTION FOR SUMMARY JUDGMENT**

This matter came before the court on defendants Jeffrey Weber, Michael Olcese, and Weber & Olcese's August 17, 2010 motion for summary judgment. Plaintiff Dean Bairactaris filed a response October 1, 2010; and Defendants filed a reply October 4, 2010. Oral argument was heard October 28, 2010. For the reasons set forth below, the court will grant the motion.

**BACKGROUND FACTS**

Defendant Weber & Olcese ("W &O") is a Troy, Michigan law firm that provides debt collection services to its clients. Defendants Jeffrey Weber and Michael Olcese are the principals of W & O. Under Michigan law, a licensed court officer is authorized to seize a judgment debtor's property to satisfy a judgment. In cases in which W & O resorts to actual execution on a judgment instead of settlement, W & O often uses the services of defendant Robert Reznick and his company defendant Due Process of Michigan, Inc.

Reznick is an approved court officer for various district and circuit courts in Michigan. In addition, he is a deputy for the Coleman Police Department, Village of Morris Police Department,

and City of Perry Police Department. He is also deputized by the Gladwin County Sheriff's Department and the Midland County Sheriff's Department.

In this case W & O obtained a default judgment against plaintiff Dean Bairactaris in the amount of $16,915.47 on behalf of its client, Ameritech Publishing. W & O submitted the standard SCAO request for an order to seize property to the 14-A District Court in Ann Arbor, Michigan. The court entered the order August 31, 2006. The order to seize property authorized a sheriff, deputy sheriff, or court officer to seize "personal property . . . includ[ing], but not limited to . . . money, wherever located" to satisfy the judgment. Ex. 5. W & O assigned Reznick to serve the order and seize property.

Reznick served the order to seize property March 14, 2007, at Plaintiff's home in Dexter, Michigan, at approximately 9:00 p.m. Plaintiff alleges that he heard his dog barking; then the doorbell rang. He went to the side door of the house, looked through the glass, and saw three or four men outside. When he asked the men to identify themselves, one or more of them said they were sheriff's deputies. Plaintiff asked to see a badge, and one of them showed a "shield type" badge. Plaintiff opened the door, and the men briskly entered the home's attached garage. One of the men showed Plaintiff the order to seize property and Plaintiff read it. Plaintiff was aware of his debt to Ameritech Publishing and acknowledged that he had previously received a copy of the default judgment in the mail. Because he was surprised that Michigan law allowed the men to seize his property, he made a phone call to the Washtenaw County Sheriff's Department; and he was informed that the sheriff's department was aware that the men were at the home doing their job.

Plaintiff then called his cousin George Sotiropolous, an Ann Arbor divorce attorney. Sotiropolous asked to speak to the "head officer." After the conversation ended, the man hung up

the phone and instructed Plaintiff "to come up with $5,000 . . . or they would ransack my house and take my things and throw me in jail." Plaintiff's dep. at 55. Plaintiff offered the men his brother's truck, the only vehicle at the house at the time; however, the men refused to take the truck in satisfaction of the debt.

Plaintiff then called four people to borrow money. He also called his wife and told her to withdraw as much cash as she could from the ATM. Plaintiff and the men waited in the garage for the people to arrive; the men never entered Plaintiff's home at any time. The four people Plaintiff called and his wife eventually arrived with cash totalling $5,000. Plaintiff gave it to "the dark-haired gentleman with the mustache." He was given a receipt for the cash and a copy of a payment schedule that provided Plaintiff would make $300 bi-weekly payments on the debt. Plaintiff never had any contact with any of them again.

Following the court's dismissal of eight of nine counts of Plaintiff's complaint, the only remaining claim is Count I, which alleges violations of 42 U.S.C. § 1983 against defendants W & O, its principals, and Robert Reznick for "conspiring to and, in fact, violating Plaintiff's civil rights." Comp. at 9.

**LAW AND ANALYSIS**

Defendants W & O, Jeffrey Weber, and Michael Olcese did not participate in the execution of the judgment; therefore, the question is whether they can be held vicariously liable under 42 U.S.C. § 1983 for the acts of Robert Reznick. The question was answered by this court in Rodriguez v. Due Process of Michigan, 2008 U.S. Dist. LEXIS 77951 (E.D. Mich. 2008), in which Chief Judge Gerald Rosen held that Reznick's company, Due Process of Michigan, could not be held vicariously liable for the acts of its employee Robert McKenna, who also had executed a judgment on behalf

3

of W & O, in the absence of any evidence to support a finding that the company had instituted an official policy that was the direct cause or moving force behind the alleged constitutional violations.

In this case, Reznick is not an employee of W & O. Even assuming he is an independent contractor, Plaintiff has failed to produce evidence of any policy promulgated by W & O that was the driving force behind Reznick's alleged constitutional violations. Therefore, W & O and its principals, Weber and Olcese, are entitled to summary judgment based on Plaintiff's § 1983 claims.

Presumably in an attempt to overcome this lack of vicarious liability, Plaintiff has alleged a claim for civil conspiracy–that W & O and its principals conspired with Reznick to violate Plaintiff's constitutional rights. In order to prevail on a claim for conspiracy, Plaintiff must show that the private individual and a state official conspired to violate Plaintiff's rights. To establish a claim of conspiracy, a party must demonstrate "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose or accomplish a lawful purpose by criminal or unlawful means." Temborius v. Slatkin, 157 Mich. App. 587, 599 (1987). "The agreement, or preconceived plan, to do the unlawful thing is the thing which must be proved." Id. at 600.

In this case Plaintiff has failed to show any collusion or communication between W & O and Reznick to violate Plaintiff's rights. Instead, Plaintiff's brief is rife with hyperbole, claiming that the law firm is aware that Reznick uses "terroristic methods" during the executions. Plaintiff claims that W & O had knowledge of past complaints against Reznick and his company by judgment debtors. However, even if that were true, it is insufficient to support a claim for conspiracy. "Knowledge alone of tortious conduct is insufficient to prove a conspiracy agreement. Knowledge of the planned tort must be combined with intent to aid in its commission. An entity that engages in legitimate business with a party that is acting tortiously cannot be deemed a co-conspirator absent

4

clear evidence of an agreement to join in the tortious conduct." In re Welding Fume Products Liability Litigation, 526 F. Supp 2d 775, 803 (N.D. Ohio 2007).

**ORDER**

It is hereby **ORDERED** that Defendants' August 17, 2010 motion for summary judgment is **GRANTED.**

                                                           s/John Corbett O'Meara
                                                           United States District Judge

Date: November 4, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, November 4, 2010, using the ECF system.

                                                           s/William Barkholz
                                                           Case Manager